# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

PARISH OF CAMERON, ET AL. : DOCKET NO. 16-cv-530

VERSUS : UNASSIGNED DISTRICT JUDGE

AUSTER OIL & GAS INC., ET AL. : MAGISTRATE JUDGE KAY

## <u>REPORT AND RECOMMENDATION</u>

Before the court are Motions to Remand [docs. 18, 27] filed by the Parish of Cameron ("Cameron," "the Parish") and the State of Louisiana *ex rel.* Jeff Landry, Attorney General and through the Louisiana Department of Natural Resources, Office of Coastal Management, and Louisiana Department of Natural Resources Secretary, Thomas F. Harris (collectively, "the State"), respectively, in response to the Notice of Removal [doc. 1] filed by defendants Chevron USA Inc., Shell Offshore Inc., Chevron USA Holdings Inc., The Texas Company, Swepi LP, BP America Production Company, Shell Oil Company, Exxon Mobil Corp., and Chevron Pipe Line Company. Also before the court are Supplemental Motions to Remand [docs. 52, 54] filed by the Parish and the State, respectively, in response to the Supplemental Notice of Removal [doc. 33] filed by defendant Apache Corporation. Defendants oppose all motions to remand in this matter.

These motions have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the motions be **GRANTED** and that this matter be remanded to the 38th Judicial District Court, Cameron Parish, Louisiana. **IT IS ALSO RECOMMENDED** that the Motion to Schedule Oral Argument [doc. 82], Motion for Leave to

File Notice of Supplemental Authority[1] [doc. 84], and Motion for Status Conference [doc. 85] be **DENIED AS MOOT**.

## I.
### BACKGROUND

This litigation arises from defendants' alleged violations of the Louisiana Coastal Resources Management Act of 1978, as amended, LA. REV. STAT. § 49:214.21 *et seq.* ("CZM Act"), and regulations and ordinances promulgated under that law (collectively, "CZM Laws"). Doc. 1, att. 2, pp. 1–2. CZM Laws regulate certain "uses" within the Louisiana coastal zone through a permitting system administered by the state Department of Natural Resources. *See generally* LA. REV. STAT. §§ 49:214.23, 214.25, 214.30.

In this matter, the Parish alleges that defendants conducted oil and gas exploration, production, and transportation activities in Cameron Parish in violation of the CZM Laws that resulted in "substantial damage to land and waterbodies" located in the Cameron Parish Coastal Zone, as defined under the CZM Act. Doc. 1, att. 2, pp. 5–6, 9. Accordingly, they filed a suit for damages and remedies under the CZM Laws in the 38th Judicial District Court, Cameron Parish, Louisiana, on February 4, 2016.[2] *Id.* at 1–24. The State of Louisiana filed petitions in intervention, *ex rel.* Jeff Landry, Attorney General and through the Louisiana Department of Natural Resources, Office of Coastal Management, and its Secretary, Thomas F. Harris. *Id.* at 92–96, 105–12.

Several defendants, named *supra*, filed a Notice of Removal to this court on April 21, 2016, and asserted that the Parish's claims are subject to admiralty jurisdiction and to federal jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1). Doc. 1. Apache

---

[1] We note for the benefit of Plaintiffs that this authority has already been considered.
[2] The damages and remedies are specified here as including, but not limited to, restoration and remediation costs; actual restoration of the disturbed areas; costs necessary to clear, revegetate, and detoxify the affected portions of the Cameron Parish Coastal Zone; declaratory relief; costs and expenses of litigation; reasonable attorney's fees; and all other damages or remedies provided in the CZM Act. Doc. 1, att. 2, p. 23.

Corporation ("Apache"), which states that it was not served until May 2016, then filed a Supplemental Notice of Removal, asserting that the matter was also removable on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Doc. 33.

The Parish and the State filed motions to remand in response to both the original and supplemental notices of removal, *supra*. In those motions they contested all grounds for removal jurisdiction asserted. The State also argued that, under the Eleventh Amendment, it is "immune from removal against its will." Doc. 27, att. 1, pp. 16–24. Additionally, the State and the Parish challenge the propriety of Apache's Supplemental Notice of Removal.[3] Doc. 52, att. 2, pp. 18–20.

On August 25, 2016, this matter was stayed due to the pendency of an appeal of the Eastern District of Louisiana's decision in *Board of Commissioners of the Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Co.* ("*SLFPA I*"), 29 F.Supp.3d 808 (E.D. La. 2014). Following the Fifth Circuit's decision ("*SLFPA II*"), 850 F.3d 714 (5th Cir. 2017), the stay was lifted and the parties submitted supplemental memoranda regarding the effect of that decision. Docs. 63–69. The matter is now ripe for decision.

## II.
### LEGAL STANDARD

Federal courts are courts of limited jurisdiction, possessing "only that power authorized by Constitution and by statute." *Gunn v. Minton*, 133 S.Ct. 1059, 1064 (2013) (quotation omitted). Generally, a defendant may remove a civil action originally filed in state court to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). The burden of establishing federal subject matter jurisdiction rests with the party seeking to invoke it. *St. Paul Reinsur. Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Thus, a removing defendant bears that burden on a motion to remand. *DeAguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.

---

[3] The State's Supplemental Motion to Remand [doc. 54] merely adopts the arguments raised by the Parish.

1995). Because of the limited nature of federal jurisdiction, removal statutes are construed strictly and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

### III.
#### ANALYSIS

As noted *supra*, the original notice of removal asserted federal jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA") and pursuant to admiralty jurisdiction. In its supplemental notice of removal, Apache alleges federal question jurisdiction. The Parish and State oppose each basis of jurisdiction and challenge the propriety of Apache's supplemental notice of removal. The State also asserts that it is immune from removal against its will under the Eleventh Amendment.

#### A. *OCSLA Removal Jurisdiction*

The OCSLA contains an independent grant of original federal jurisdiction for

> cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this chapter.

43 U.S.C. § 1349(b)(1). The Fifth Circuit interprets this language as "straightforward and broad," and a plaintiff need not expressly invoke the OCSLA for its jurisdictional grant to apply. *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014). Instead, courts in this circuit typically ask: (1) whether the activities that caused the injury constituted an "operation" conducted on the Outer Continental Shelf and involved exploration and production of minerals, and (2) whether the case

"arises out of, or in connection with that operation."[4] *Id.* (quotations omitted). If the court determines that the first prong is met, it then applies a "but-for" test to determine the causation prong. *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996).

Here, defendants do not contest that the complained-of activities and injuries occurred within the coastal zone, rather than on the Outer Continental Shelf ("OCS"). They maintain, however, that under § 1349(b)(1) the term "operation" is not limited to offshore activities or to just the injury-causing activity, and that the alleged permit violations cover and/or relate to their activities on the OCS. Doc. 38, pp. 22–27.

As Cameron notes, the OCSLA removal allegations made here are similar to those recently rejected in the Eastern District of Louisiana. *See Plaquemines Parish v. Total Petrochemical & Ref. USA, Inc.* ("*Plaquemines v. Total*"), 64 F.Supp.3d 872, 894–95 (E.D. La. 2014).  There, Judge Zainey determined that the defendants could not satisfy the first prong of the OCSLA jurisdictional test because "all of the oil and gas activities that give rise to the claims asserted in this action occurred in Plaquemines Parish—none of the operations that give rise to the alleged violations of the CZM Laws occurred on the Outer Continental Shelf" and all of the alleged injuries and damages were likewise sustained in Plaquemines Parish rather than on the OCS. *Id.* at 894.

The Plaquemines defendants also argued, and defendants raised in their notice of removal in this case, that the challenged activities "involve[d] components of the dense, highly integrated, and interconnected infrastructure relating to the outer continental shelf." Doc. 1, p. 6. In response, Judge Zainey noted that two other decisions from the Eastern District had already rejected this theory and that

---

[4] The statute does not define "operation," though courts in this circuit construe it broadly in context with other evidence of the statute's intent to encompass the full range of oil and gas activity on the Outer Continental Shelf. *EP Operating Ltd. Partner v. Placid Oil Co.*, 26 F.3d 563, 568 and n. 12 (5th Cir. 1994).

> [a]s in those cases, the relationship between the injuries in this case and the activities that cause them and any operations on the OCS is simply too remote and attenuated. Exercising jurisdiction in this manner would give federal courts jurisdiction over virtually any oil or gas dispute regardless of its relationship to OCS operations.

*Plaquemines v. Total*, 64 F.Supp.3d at 897.

We find the above analyses persuasive.[5] In essence, defendants seek to establish OCSLA jurisdiction because their regulated pipelines and infrastructure in the coastal zone connect to the OCS and support operations thereon. *See* doc. 38, pp. 25–27. Like the Eastern District, we do not decide "that OCSLA jurisdiction can never attach when the injury causing acts *and* the damage are sustained off the shelf, if the connection to offshore operations is strong enough." *Plaquemines v. Total*, 64 F.Supp.3d at 898 (citing *Ronquille v. Aminoil Inc.*, 2014 WL 4387337 (E.D. La. Sep. 4, 2014)) (emphasis added). However, broadening OCSLA jurisdiction in the manner suggested by defendants would greatly increase this court's original jurisdiction over suits arising in the coastal parishes without any showing that Congress so intended. Accordingly, defendants fail to show a basis for federal jurisdiction under the OCSLA.

### B. Admiralty Jurisdiction

Defendants also argue that this case is removable under this court's admiralty jurisdiction. Doc. 38, pp. 9–21. As we previously noted, the 2011 amendment to 28 U.S.C. § 1441(b) removed certain language on which the Fifth Circuit had relied to limit the removal of maritime claims. *Harbor Docking & Towing Co., LLC v. Rolls Royce Marine N. Am., Inc.*, 2014 WL 6608354 at *2

---

[5] We note Defendants' reliance on *In re Deepwater Horizon*, where the Fifth Circuit rejected a situs limitation within OCSLA's jurisdictional inquiry. 745 F.3d at 164. That argument was likewise presented to Judge Zainey, who remarked that the damages in that matter "were directly traceable to and proximately caused by an operation on the OCS" and that the question there was the proper application of the second prong's but-for test, not the first prong. *Plaquemines v. Total*, 64 F.Supp.3d at 895–96. He also noted that the inquiry in the first prong was uncontested in *Deepwater Horizon* "because the case unequivocally involved an injury-causing operation on the OCS." *Id.* However, he also clarified that OCSLA jurisdiction is not destroyed merely because an injury occurs off of the OCS. *Id.* (citing *In re Deepwater Horizon*, 745 F.3d at 164).

(W.D. La. Nov. 19, 2014). As a result, some district courts determined that maritime claims could thus be removed solely on the basis of the federal district court's original jurisdiction over cases arising in admiralty. *Id.* at *2 and n. 2. However, courts within this district have uniformly held that the amendment does not alter "the long-held understanding that admiralty claims brought at law in state court pursuant to the saving to suitors clause are not removable in the absence of an independent jurisdictional basis."[6] *Gabriles v. Chevron USA, Inc.*, 2014 WL 2567101 at *4 (W.D. La. Jun. 6, 2014) (Haik, J.).

Defendants point to contrary interpretations in the Southern District of Texas and Middle District of Louisiana. *See* doc. 38, pp. 15–16. They emphasize that the Seventh Circuit is the only federal Court of Appeal to address this issue, and has held that the 2011 amendments do make cases removable on the basis of maritime jurisdiction. *Id.* at 15; doc. 66, p. 5 n. 4 (citing *Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015)). Finally, they point to the Fifth Circuit's express refusal to reach this issue in *SLFPA II* and to dicta in that decision allegedly indicating the circuit's inclination towards removability on the basis of admiralty jurisdiction. Doc. 66, pp. 2–5; *see SLFPA II*, 850 F.3d at 726. However, neither the extra-circuit authority nor the dicta in *SLFPA II* provides sufficient support for disrupting our prior holding and the consensus in this district regarding the impact of the 2011 amendments on admiralty jurisdiction. Accordingly, because the Parish filed this matter in state court pursuant to the saving to suitors clause, it may not be removed absent a separate basis for federal jurisdiction.

Under 28 U.S.C. § 1447(d), an order remanding a case to state court is generally "not reviewable on appeal or otherwise." This provision obviates the court's ability under 28 U.S.C. §

---

[6] *See also Porter v. Great Am. Ins. Co.*, 2014 WL 3385148 (W.D. La. Jul. 9, 2014) (Walter, J.); *Serigny v. Chevron USA, Inc.*, 2014 WL 6982213 (W.D. La. Dec. 9, 2014) (Drell, C.J.); *Boudreaux v. Global Offshore Res., LLC*, 2015 WL 419002 (W.D. La. Jan. 30, 2015) (Hill, M.J.).

1292(b) to certify issues for interlocutory appeal. *Chase v. Callon*, 1997 WL 732404 at *1–*2 (E.D. La. Nov. 19, 1997). Because we conclude that remand should be granted, we cannot concurrently recommend, as defendants request, that the issue be certified for review.

### C. *Federal Question Jurisdiction*

Finally, Apache alleged in its Supplemental Notice of Removal that this case presents a substantial federal question, creating jurisdiction under 28 U.S.C. § 1331. As noted *supra*, the State and the Parish have challenged the propriety of this notice. We therefore first address plaintiffs' arguments to determine whether we may consider on the merits the additional removal grounds.

### 1. *Whether Apache may file a Supplemental Notice of Removal*

As the Parish points out, to remove a suit under 28 U.S.C. § 1446, a defendant must, within thirty days of receiving service of an initial state court petition, file a notice of removal containing a short and plain statement of the grounds for removal. A defendant may freely amend the notice within this period but afterwards may do so only "to set out more specifically the grounds for removal that have already been stated, albeit imperfectly, in the original notice" and may not "add completely new grounds for removal." *SLFPA I*, 29 F.Supp.3d at 847–48 (citing 14C Charles Alan Wright, et al., *Federal Practice and Procedure* § 3733 (4th ed. 2013)).

Cameron admits that Apache was not required to join in or consent to the original notice of removal because Cameron had not, at that time, requested service on any defendant, including Apache. Doc. 52, att. 2, p. 18. It maintains, however, that the period for amending the notice of removal began to run when the original notice was filed and that Apache's notice filed over thirty days later cannot add new grounds for removal. Cameron also argues that, to the extent that Apache's notice would be deemed a new notice and thus exempt from the limits on amendment,

it is procedurally defective under 28 U.S.C. § 1446(b)(2) because Apache failed to obtain the consent of the other defendants properly joined and served.

We agree that Apache's supplemental notice is not properly construed as an amended notice of removal. Instead, it is a procedurally proper vehicle for that defendant, having been served after the original notice, to raise jurisdictional arguments not contained in the original notice. Just as codefendants are allowed to file their own answers and raise their own affirmative defenses, so too must they be allowed to raise their own jurisdictional arguments when they believe that they can assert a viable line of reasoning.

As Apache contends, it would create a legal absurdity to extend the consent requirements to its subsequent notice of removal. Section 1446(b)(2) provides that all defendants properly joined and served at the time that a case is removed "must join in or consent *to the removal of the action*," rather than to each basis of federal jurisdiction invoked. (Emphasis added.) There is no procedural mechanism under that rule for a defendant who is joined and served after the notice of removal to withhold its consent—instead, it is automatically made a party to the federal action. Requiring that Apache obtain the consent of its codefendants to this action that had already been removed, even if they were served between the original notice of removal and Apache's, is thus a redundancy unsupported by the plain language of the consent requirement. Accordingly, there is no procedural obstacle to this court's consideration of the jurisdictional argument raised by Apache.

### 2. *Whether there is a substantial federal question*

Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether a cause of action arises under federal law, courts apply the well-pleaded complaint rule. *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 551 (5th Cir. 2008). This rule recognizes the axiom "that a

plaintiff is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is also available." *Id.* Additionally, anticipated defenses under federal law do not create a basis for federal question jurisdiction. *New Orleans & Gulf Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008). Thus, under the well-pleaded complaint rule, "a federal court has original or removal jurisdiction only if a federal question appears on the face of the plaintiff's well-pleaded complaint; generally, there is no federal jurisdiction if the plaintiff properly pleads only a state law cause of action." *Bernhard*, 523 F.3d at 551.

Still, a state law claim supports federal subject matter jurisdiction when the claim nonetheless "turn[s] on substantial questions of federal law." *Enable Mississippi River Transmission, LLC v. Nadel & Gussman, LLC*, 844 F.3d 495, 498 (5th Cir. 2016) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 125 S.Ct. 2363 (2005)). "For a state law claim to support federal subject matter jurisdiction, a federal issue must be '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (quoting *Gunn*, 133 S.Ct. at 1065); *see Grable*, 125 S.Ct. at 2367–68. "Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 133 S.Ct. at 1065 (internal quotations omitted).

Apache argues that one of the remedies sought—management of the Coastal Zone wetlands and waterways by the 38th Judicial District Court—creates a substantial federal issue. It contends that any court-ordered restoration would require a permit issued by the United States Army Corps of Engineers ("the Corps"), and that a request for such a permit would "trigger[] a highly-complex regulatory process involving multiple federal and state agencies." Doc. 56, pp. 17–18. Under this

framework, it asserts, the Corps must conduct a substantive evaluation of any proposed project within its jurisdiction, possibly resulting in denials of requested permits or limitations on the scope of a project. *Id.* at 16–18. Accordingly, Apache maintains that this action should be tried in federal court due to the relation of the remedy sought to the Corps' regulatory authority.

Apache identifies that the Corps' authority over the restoration remedy arises from Section 10 of the Rivers and Harbors Act of 1890 ("RHA"),[7] and the 1972 amendments to the Water Pollution Control Act, commonly known as the Clean Water Act ("CWA").[8] *Id.* at 18–19. Under both statutes, the Corps maintains broad jurisdiction over projects on navigable waters of the United States. However, the federal Coastal Zone Management Act, 16 U.S.C. § 1451 et seq. ("CZMA"), also grants to states a role in coastal zone projects. Under the CZMA, states are encouraged to develop coastal management programs ("CMPs"). *Id.* at §§ 1453(12), 1456(c). Applicants for certain federal licenses or permits for activities impacting coastal resources may be required to certify that their proposed activities comply with and will be conducted in a manner consistent with the state's federally approved CMP. *Id.* at § 1456(c)(3)(A).

Thus, as Cameron's expert states, the "[Louisiana Office of Coastal Management] and local programs develop and administer policies for the management of coastal resources and the Louisiana Coastal Protection and Restoration Authority spearheads Louisiana's restoration efforts including ensuring that all proposed restoration projects are in compliance with the state's coastal master plan." Doc. 57, att. 2, pp. 2–3. In other words, the Corps "has a role" in reviewing and permitting projects but Louisiana is the "driving force" in the management of its coastal resources.

---

[7] Specifically, § 10 of the RHA requires Corps approval to build certain structures in the waters of the United States. 33 U.S.C. § 403. It also makes it unlawful to excavate, fill, "or in any manner … alter or modify the course, location, condition, or capacity of … any navigable water of the United States," without prior approval by the Corps. *Id.*

[8] Section 404 of the CWA authorizes the Corps to issue permits, after notice and opportunity for public hearing, for the discharge of dredged or fill material into navigable waters at specified disposal sites. 33 U.S.C. § 1344(a).

*Id.* at 2. He asserts that the Corps "will not typically" issue the permit required under the CWA prior to a decision by a state agency, and that if a state agency denied a permit then the Corps "would likely" do the same. *Id.* Apache maintains, however, that the Corps' involvement nonetheless entails "a detailed, wide-ranging analysis," necessitating consultation with state and federal agencies alike and possibly requiring that the Corps prepare an environmental impact statement. Doc. 67, p. 4; doc. 56, p. 20.

Apache notes that in *SLFPA I* Judge Brown found a substantial federal question based on the applicability of the RHA and CWA and contends that this court should reach the same conclusion. Doc. 56, p. 16. Cameron emphasizes, however, that the Eastern District rejected this argument when Apache raised it in the Plaquemines Parish coastal zone litigation.[9] Doc. 57, pp. 7–9; *see Plaquemines Parish v. Rozel Operating Co.*, 2015 WL 403791 at *4–*5 (E.D. La. Jan. 29, 2015). As Judge Africk noted in *Rozel*, *SLFPA I* involved state law tort claims in which the plaintiff agency had "based the standard of care on federal law, which would require the court to decide 'what duties these laws impose on Defendants.'" 2015 WL 403791 at *5 (quoting *SLFPA I*, 29 F.Supp.3d at 854). Meanwhile, he determined that Apache's argument offered

> only a nebulous characterization of the questions of federal law . . . implicated by the Parish's lawsuit: questions concerning the scope of the [Corps'] authority to assert ultimate control over the operations in the Coastal Zone and whether that authority is exclusive, as well as questions concerning the effect of federal law on the permitted scope and authority of the state standards.

*Id.* When Apache made the same argument to Magistrate Judge Whitehurst of the Lafayette Division of this court, she also distinguished the matter from recent Supreme Court precedent and *SLFPA I*, noting that Apache had not "articulate[d] a remotely comparable specific federal issue

---

[9] Defendant Tennessee Gas made the same argument in another Plaquemines Parish case, and it was likewise rejected. *Plaquemines Parish v. Hilcorp Energy Co.*, 2015 WL 1954640 at *4–*5 (E.D. La. Apr. 29, 2015).

… with any meaningful degree of specificity." *Stutes v. Gulfport Energy Corp.*, 2017 WL 4286846 at *15 (W.D. La. Jun. 30, 2017).

Although we agree that *SLFPA I* is distinguishable from this matter on the same grounds cited by Judge Africk, we conclude that the issue is not so nebulous as indicated in *Stutes*. We cannot resolve this question based on the contention that the Corps' decision on permits for any coastal restoration projects would *likely* fall in line with the decision of a state agency.[10] Instead, we note that the substantiality inquiry looks to the importance of the issue to the federal system as a whole, and that a federal issue may thus give rise to federal jurisdiction when its resolution has "broad significance for the federal government." *SLFPA II*, 850 F.3d at 723–24 (quoting *Gunn*, 133 S.Ct. at 1066) (internal quotation and alteration omitted).

Apache has correctly set forth the Corps' regulatory authority over the allegedly contaminated waterways and wetlands in this case, and the regulatory process triggered by any request to conduct restoration activities in that region. We identify a definite federal interest in both areas. Given the prevalence of this type of litigation and the potential scope of the restoration remedies in cases such as these, we also determine that it is substantial. On that same reasoning, the adjudication of this matter in federal court would not upset the balance of federal and state judicial responsibilities. Moreover, we acknowledge the desirability of a federal forum, given the apparent advantage that Cameron Parish will have in its own courtroom.

Still we cannot find that a federal issue is necessarily raised or actually disputed insofar as no restoration remedy has yet been ordered and no actual conflict yet exists concerning the Corps'

---

[10] We also reject Cameron's argument, made relying only on a law review article, that the authority ceded to states through the CZMA results in "reverse preemption." *See* Carlson and Meyer, *Reverse Preemption*, 40 Ecology L. Q. 583 (2013). As the article admits, the limitations on the Corps' authority in the CZMA "do not technically constitute preemption in that they do not prevent the federal government from legislating in the field or on the particular issue." *Id.* at 584 n. 2. Apache points out that, although provisions in the CWA and CZMA place limits on the Corps' permitting ability, leading the article's authors to argue the creation of a state veto in the coastal zones, *id.* at 587–600, the provisions may just as fairly be read as granting to the Corps a federal veto.

authority over that remedy.[11] Accordingly, Apache's argument fails the first two factors of the test outlined in *Gunn* and *Grable*, *supra*, and so federal jurisdiction cannot be established on the basis of a substantial question of federal law. Because defendants cannot establish a basis for federal jurisdiction, we need not consider the State's Eleventh Amendment argument.

## IV.
### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motions to Remand [docs. 18, 27, 52, 54] in this matter be **GRANTED** and that the matter be remanded to the 38th Judicial District Court, Cameron Parish, Louisiana**. IT IS ALSO RECOMMENDED** that the Motion to Schedule Oral Argument [doc. 82], Motion for Leave to File Notice of Supplemental Authority [doc. 84], and Motion for Status Conference [doc. 85] be **DENIED AS MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and FED. R. CIV. P. 72(b), the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

---

[11] As Apache notes, the Fifth Circuit has held that a plaintiff's request for a particular remedy may serve as the basis for federal jurisdiction. *See Gillis v. Louisiana*, 294 F.3d 755, 760 (5th Cir. 2002). However, in *Gillis* the plaintiffs were "implicitly seeking injunctive relief [from a state regulation] based on a federal statute," and so on its face the matter required analysis of federal law based on the allegations of preemption. *Id.* That holding cannot here justify finding a necessarily raised and actually disputed federal issue based merely on a hypothetical conflict over restoration plan specifications between the Corps and either the state court or one of the parties.

THUS DONE this 17th day of January, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE